# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>CAROL F. GRASSA,<br><br>　　　　　　　　　Debtor<br>_____<br><br>JOSEPH BRAUNSTEIN, as he is<br>　Chapter 7 Trustee,<br><br>　　　　　　　　　Plaintiff<br><br>v.<br><br>CAROL F. GRASSA, Individually and as<br>　she is Trustee of the Grassa Family<br>　Realty Trust, and<br>NICHOLAS J. GRASSA, SR.,<br><br>　　　　　　　　　Defendants | Chapter 7<br>Case No. 04-18292-RS<br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 04-1448 |

**MEMORANDUM OF DECISION ON**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

　　　By his complaint in this adversary proceeding, the chapter 7 trustee, Joseph Braunstein, seeks to recover for the bankruptcy estate certain real property that the debtor, Carol F. Grassa ("Carol" or "the Debtor"), held only as trustee of the Grassa Family Realty Trust and which, shortly before her bankruptcy filing, she (as trustee) transferred to her husband, defendant Nicholas J. Grassa, Sr. ("Nicholas"), for virtually no consideration.  The plaintiff contends that the transfer from the debtor to her husband should be deemed a transfer of an asset that belonged to her individually because, under the declaration of trust, she as trustee had the unlimited right to revoke or amend the trust at any time and, upon revocation, to convey trust property to a nominee free of trust.  By the present motion, Braunstein seeks summary judgment on two counts:  Count I, in which he seeks a declaration that, notwithstanding that the property is now in

the name of Nicholas and before that in trust, it should be deemed an asset of the debtor individually and therefore of her bankruptcy estate; and Count IV, in which he seeks to avoid the debtor's transfer of the property to her husband under 11 U.S.C. § 548(a)(1)(B) as a constructively fraudulent transfer. The defendants oppose the motion. For the reasons set forth below, the Court concludes that summary judgment must be denied as to both counts. However, as to Count IV, there exists a genuine issue of material fact as to only one element that the plaintiff must establish under § 548(a)(1)(B), the requirement that the debtor received less than reasonably equivalent value; the remaining elements of that count shall be deemed established for purposes of trial. Most notably, the Court concludes that the asset transferred was, under Massachusetts law, an interest of the debtor in property.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Where, as here, the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under F.R.CIV.P. 50(a). *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *Jaroma v. Massey*, 873 F.2d

2

17, 20 (1st Cir. 1989). For purposes of a motion for summary judgment, the court must and does construe the evidence, and draw all inferences therefrom, in the manner most favorable to the non-moving party.

**FACTS**

The relevant facts are few and uncontroverted. Prior to December 22, 1978, the real property at issue, located at 136 Vane Street, Revere, Massachusetts ("the Property"), belonged to Nicholas's father, Andrew Grassa ("Andrew"). Carol and her husband, Nicholas, resided at the property as tenants-at-will with their two then-minor children, Nicholas Grassa Jr. ("Nicholas Jr.") and Anthony Grassa. On December 22, 1978, Carol executed a declaration of trust, thereby establishing the Grassa Family Realty Trust. The declaration named Carol as trustee and, in the event of her death or disability, Nicholas as successor trustee. The declaration named the children, Nicholas Jr. and Anthony, as the beneficiaries. The declaration of trust included the following language:

> The said Trustee [Carol Grassa] hereby reserves the right to revoke or amend the Trust at any time before the death of the above named Nicholas Grassa and Carol Grassa. . . . Upon such revocation, the Trust Property shall be conveyed by the Trustee to its Nominee, free from all Trusts.

Also on December 22, 1978, Andrew transferred the Property to "Carol Grassa, Trustee of the Grassa Family Realty Trust."

On September 24, 2004, Carol Grassa, as trustee of the Grassa Family Realty Trust, transferred the property to Nicholas. If Nicholas paid any consideration at all for the transfer, the consideration paid was less than $100; the beneficiaries of the trust received no consideration for the transfer. The Trustee has submitted no evidence as to the value of the property and the

extent of encumbrances against it at the time of the transfer.

On the date of her bankruptcy filing, the debtor's assets (excluding only the real property at issue) had a total value of $11,731 and her liabilities totaled $50,727; liabilities exceeded assets by $39,806. The defendants have submitted no evidence that her assets decreased or her liabilities increased materially in the eighteen days between the date of the transfer to Nicholas and the date of her bankruptcy filing. If the Property is counted as an asset of the debtor, then the total value of her assets, just prior to the transfer, is not established, no evidence having been adduced as to the net equity in the Property as of that date. However, it is nonetheless uncontroverted that if the Property had net equity as of that date of at least $39,806—that is, at least enough to render the debtor solvent prior to the transfer—the debtor became insolvent as a result of the transfer. Therefore, either (a) the debtor was insolvent at the time of the transfer or (b) she was rendered insolvent by the transfer; it is not clear which is true, but it is established and uncontroverted that one or the other is true.

Carol Grassa filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 12, 2004, thereby commencing this bankruptcy case. Joseph Braunstein was appointed trustee in the case.

## DISCUSSION

### Count I

In Count I, the plaintiff seeks a declaration that, notwithstanding that on the date of the bankruptcy filing title to the property was in the name of Nicholas and before that in the debtor as trustee, the property should be deemed an asset of the debtor individually and therefore of her bankruptcy estate. In support of this count, the plaintiff cites authority for the proposition that,

4

while the property was in the trust, it would under Massachusetts law have been deemed an interest of the debtor in property. However, the property has been transferred from the Trust to Nicholas, and the plaintiff offers no theory or authority under which the Court could disregard or (other than under Count IV) avoid the transfer to Nicholas. In short, the plaintiff's arguments under this count simply do not go far enough. Therefore, the Court will deny summary judgment as to this count.

**Count IV**

In Count IV of his Amended Complaint, Braunstein seeks to avoid the transfer of September 24, 2004, from Carol Grassa, as trustee of the Grassa Family Realty Trust, to Nicholas. He seeks to avoid the transfer under 11 U.S.C. § 548(a)(1), both as actually fraudulent under § 548(a)(1)(A) and as constructively fraudulent under § 548(a)(1)(B)(i) and (ii)(I). He seeks summary judgment only on the latter, constructive basis. In relevant part, § 548(a)(1) provides as follows:[1]

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> . . .
>
> (B)  (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

---

[1] Section 548 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. However, this case was filed before the effective date of the 2005 amendments and therefore is governed by § 548 as is existed prior to the amendments.

5

11 U.S.C. § 548(a)(1) (pre-BAPCPA).  In order to prevail on this count, a trustee in bankruptcy must establish the following elements:  (1) that there was a transfer; (2) that the asset transfer was "an interest of the debtor in property"; (3) that the transfer occurred on or within one year before the date of the filing of the petition; (4) that in exchange for the transfer, the debtor received less than a reasonably equivalent value; and (5) that the debtor was insolvent on the date that the transfer was made, or that the debtor became insolvent as a result of it.

  1. <u>**A Transfer**</u>

The first element requires a showing that there was a "transfer" of "an interest of the debtor in property."  Transfer is a defined term meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property; or with an interest in property[.]" 11 U.S.C. § 101(54) (pre-BAPCPA).  Brauntein has adduced evidence that Carol Grassa, as trustee of the Grassa Family Realty Trust, conveyed the Property to Nicholas.  This evidence is uncontroverted, and the defendants do not dispute that the property was transferred.  Accordingly, this requirement of a transfer is satisfied.

  2. <u>**Of an Interest of the Debtor in Property**</u>

The plaintiff must establish that the asset transferred was "an interest of the debtor in property."  Braunstein does not deny that the Property belonged to the Carol Grassa in her capacity as trustee of the Grassa Family Realty Trust.  Nor does he contend that the bare legal title that a trustee normally holds—that is, legal title without a beneficial interest—is sufficient to constitute "an interest of the debtor in property" within the meaning of § 548(a)(1).  Rather, he contends that, because of the language of the declaration of trust, Carol Grassa's interest in the

6

property was not limited to the bare legal title of a trustee. Rather, he argues, the declaration of trust gave her what amounted to a general power of appointment over the trust assets; and, in view of this power, Massachusetts law would treat the assets of the trust as assets of the trustee herself, free of trust.

The defendants disagree. They contend that Carol Grassa holds the assets only as trustee; that all her powers with respect to the trust assets are powers she is bound to exercise as a fiduciary, for the benefit of the beneficiaries; and that she does not have absolute dominion over the assets as her own. The defendants distinguish in two ways those cases in which Massachusetts law has been contrued to permit a trustee's creditors to reach assets she ostensibly holds as trustee for another. First, in those cases, the authority reserved to the trustee was much broader than the powers given the trustee in this case. Second, in each of those cases, it was critical that the trustee was also the settlor of the trust; here, by contrast, the trustee was not the settlor.

Section 548(a)(1) of the Bankruptcy Code requires a transfer "of an interest of the debtor in property." This is a requirement of federal law, but federal law looks to state law to determine whether the debtor had a property interest in the asset at issue. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979). In this instance, the applicable law is that of the Commonwealth of Massachusetts.[2] When ruling on an issue of state law, a bankruptcy court must rule as it believes the highest court of the state would rule. In this instance, the leading state court decision is from the Massachusetts Appeals Court, not the Supreme Judicial Court. "When the highest court has not addressed the issue, the Bankruptcy Court should not regard

---

[2] All parties cast their arguments in terms of Massachusetts law. The Court is aware of no connection of this controversy to any other state.

7

lower court rulings on the issue as dispositive. Rather, it should attempt to predict what the highest court would do and to that end should accord proper regard to decisions of other courts of the state." *In re Miller*, 113 B.R. 98, 101 (Bankr.D.Mass. 1990).

The declaration of trust that created the Grassa Family Realty Trust includes the following relevant language:

> The said Trustee [Carol Grassa] hereby reserves the right to revoke or amend the Trust at any time before the death of the above named Nicholas Grassa and Carol Grassa. . . . Upon such revocation, the Trust Property shall be conveyed by the Trustee to its Nominee, free from all Trusts.

By this language, the declarant grants to the trustee the right to "revoke"—which, in view of the fact that the declarant is not the grantor/settlor, I construe to mean terminate—or amend the trust at any time until her death. It also provides that upon revocation/termination, the trust property shall be conveyed by the trustee to "its"—meaning the trustee's—nominee free of trust. This power enables the trustee to remove the property from trust at any time and to transfer it free of trust to any nominee she may choose.

The issue presented is whether, under Massachusetts law, the assets which a trustee holds under such a grant of authority are deemed assets of the trustee, individually, such that they may be reached by her creditors. In 1977, the Massachusetts Appeal Court held that

> where a person places property in trust and reserves the right to amend and revoke, or to direct disposition of principal and income, the settlor's creditors may, following the death of the settlor, reach in satisfaction of the settlor's debts to them, to the extent not satisfied by the settlor's estate, those assets owned by the trust over which the settlor had such control at the time of his death as would have enabled the settlor to use the trust assets for his own benefit.

*State Street Bank and Trust Co. v. Reiser*, 7 Mass. App. Ct. 633, 638 (1979) (creditors of settlor/ beneficiary of intervivos trust could reach trust assets upon his death where he had reserved

8

powers to amend or revoke and to direct the disposition of principal and income during his lifetime, even though the powers remained unexercised at the time of his death, and even though the remainder beneficiaries' rights in the trust vested upon his death because there was no further possibility that he could exercise his powers). This holding was followed by the Massachusetts Appeals Court in *Wolfe v. Wolfe*, 21 Mass. App. Ct. 254, 257 (1985) (where settlor/trustee had reserved right to withdraw five-sixths of trust corpus while he was alive, his former wife, as judgment creditor, was permitted to reach that portion of the trust corpus after settlor's death) and again in *ITT Finance Corp. v. Stockdale*, 25 Mass. App. Ct. 986, 987 (1988) (in view of the settlor's power to amend and revoke the trust and to substitute beneficiaries, a power retained until death, creditor had right to reach the trust property as if it had been the settlor's own). The Supreme Judicial Court itself relied upon and, in essence, endorsed the *Reiser* holding in *Nile v. Nile,* 432 Mass. 390, 395 (2000) (trust property subject to the claims of settlor's creditors because of interest settlor retained during his lifetime as trustee and sole beneficiary of revocable trust, under which he enjoyed all indicia of ownership of trust property), albeit without elaboration. With one exception, federal courts applying Massachusetts law have uniformly treated *Reiser* as the law of the Commonwealth. See *Markham v. Fay*, 74 F.3d 1347 (1st Cir. 1996) (where the trust instrument as a whole gave the settlor trustee the power to eliminate the interests of all others in the trust, a tax lien against the assets of the settlor was deemed to attach to the assets of the trust); *In re Beatrice*, 296 B.R. 576 (B.A.P. 1st Cir. 2003) (assets of trust established by the debtor for the benefit of his children, pursuant to which he retained the power to terminate the trust, to pledge its assets to secure his personal debts, and to add or eliminate beneficiaries, is property of his bankruptcy estate); *In re Tougas*, 338 B.R. 164 (Bankr. D. Mass. 2006) (where debtor settlor retained power not only to revoke but also to alter or amend the trust,

9

the trust res was deemed property of the settlor's bankruptcy estate); and *In re Cowles*, 143 B.R. 5 (Bankr. D. Mass. 1992) (where settlor of family realty trust retained powers to revoke, alter or amend the trust, to change the identity and number of trustees and beneficiaries, and to withdraw any part or all of the property of the trust, the net equity in the assets of the trust was subject to the reach of the debtor/settlor's creditors in bankruptcy, and debtor was obligated to devote that equity to his chapter 13 plan). The one exception is the Court of Appeals in *George v. Kitchens by Rice Bros., Inc.*, 665 F.2d 7, 8 (1st Cir.1981), where the Court held that "a power of revocation under Massachusetts law is not considered property . . . and cannot be reached by creditors." In its later opinion in *Markham v. Fay*, however, the Court of Appeals explained that "*George* remains a correct interpretation of Massachusetts law where, as in that case, the only power reserved by the settlor, who was also the trustee but not a beneficiary, was the power to revoke." *Markham v. Fay*, 74 F.3d at 1360.

The defendants argue that *Reiser* should not be followed here for the following reasons. First, they argue that this matter is governed by the construction of Massachusetts law advanced in *George v. Kitchens by Rice Brothers, Inc.*, not by *Reiser* and the cases following it. Second, they contend that the debtor's powers with respect to the trust assets are limited, that she may exercise them only as a fiduciary and only for the benefit of the beneficiaries, and that she has no power to terminate the trust or to change beneficiaries. Third, they contend that were Carol to revoke the trust, the res would revert to the donor, not to her. And fourth, they also contend that in all the cases cited, the debtor in question was the settlor of the trust. Here, the debtor is not the settlor; therefore, the defendants argue, *Reiser* does not apply.

I begin by rejecting the argument that this case is governed not by *Reiser* but by Massachusetts law as construed in *George*. In *Markham v. Fay*, the Court of Appeals stated that

10

*George* remained a correct interpretation of Massachusetts law where "the only power reserved by the settlor . . . was the power to revoke." *Markham v. Fay*, 74 F.3d at 1360.  Here, no power was reserved by the settlor.  The power in question resided in Carol—who was declarant and trustee but not grantor and therefore not settlor—and was effectively given to her when the property was transferred to her as trustee and thereby made subject to the declaration of trust. Moreover, although the declaration of trust gives to the trustee the power to "revoke" the trust, revoke here is not used in the strict sense of "to recall or to take back."  She did not settle the trust in the first instance and therefore she cannot take it back.  Here, "revoke" means simply to cancel or terminate.  And, as explained below, termination does not result in reversion of the property to the grantor; rather, it places the property of the trust in the full control of Carol in her individual capacity.  In addition, Carol, as trustee, held not only the power to revoke but also the power to amend the trust.  The Court therefore concludes that this case does not fall within the very narrow category of cases as to which *George* remains a valid statement of Massachusetts law.

The defendants next argue that Carol's control of the trust assets was limited because, if she had revoked the trust, the res would have reverted to the donor; the res would not thereby have been put at her disposal.  This argument is at odds with the express language of the declaration of trust: "Upon such revocation, the Trust Property shall be conveyed by the Trustee to its Nominee, free from all Trusts."  This language specifies that upon revocation, the Trustee shall convey the property to "its Nominee."  From the context, the word "its" plainly means "the Trustee's."  "The Trustee" is the noun immediately preceding "its" and therefore the natural referent of the possessive pronoun.  There is no mention of the donor in the sentence in question. Nor (despite its capitalization) is the term "Nominee" defined in the declaration of trust.  The

11

context gives every reason to construe "its" as "the Trustee's" and no reason to construe it as "the donor's" or as anything else. The Court concludes that the sentence in question gave or reserved to the trustee, Carol, the power, upon her revocation of the trust, to convey the property to her nominee free of trust.

I turn next to the defendants' contention that debtor's powers as trustee were limited and not so extensive as to justify permitting her creditors to reach the trust assets. This argument requires the Court to determine what powers the debtor, as trustee, held as to the trust assets, and then to ascertain whether, under the cases, these justify subjecting the trust assets to the reach of creditors.

What powers did the debtor hold? In addition to the usual powers of a trustee to manage and sell and distribute trust assets for the benefit of the beneficiaries, the debtor, as trustee, had powers that allowed her to override the interests of the beneficiaries and deal with the trust assets as her own. These include the power to alter and amend the trust, the power to revoke the trust, and the power, upon revocation, to convey the assets free of trust to whomever she saw fit, including herself. Insofar as the declaration of trust identifies the beneficiaries, the power to alter or amend the trust was a power to, among other things, eliminate beneficiaries and name new ones.[3] The power to revoke conveys the same power. Upon revocation, the trustee could transfer the trust assets to her nominee "free from all Trusts." This phrase, "free from all Trusts," does not mean that the transferee would receive the property free of any beneficial

---

[3] I am mindful that under Massachusetts law, "a trustee is restricted in the exercise of even broad discretionary powers by the terms of the trust viewed as a whole, and by the trustee's fiduciary duty to use his or her best judgment in good faith," and that she may not exercise a broad discretionary power to shift beneficial interests in a trust. *Markham v. Fay*, 74 F.3d at 1358. Here, however, the power in question goes specifically and expressly to rewriting the trust itself, permitting the trustee to change the trust relationship.

12

interest therein of the beneficiaries; that would be true of any transfer of trust property. Rather, "free from all Trusts" means that in exercising this power to convey, the trustee is not bound by the trust and by fiduciary obligations to the beneficiaries. Rather, the power to convey that the declaration of trust gives to the trustee is thus, in essence, a general power of appointment that the trustee holds in her individual capacity.

The cases emphasize that "the touchstone of the analysis is whether the trust instrument as a whole gives [the debtor] the power to eliminate the interests of all others in the trust." *Markham v. Fay*, 74 F.3d at 1357. "[W]hat is dispositive for these purposes is whether the trust instrument contained ascertainable limits on [the trustee's] power to pay income or invade principal for her benefit alone that the other beneficiaries could rely on to enforce any rights of their own." *Id*. at 1358. Here, the trust places no limit on the power of the trustee to modify of amend the trust, to revoke the trust, and to dispose of the assets upon revocation. In essence, the declaration of trust created a trust but also gave to the declarant, in her individual capacity, a general power of appointment over the trust assets. Nothing in the trust restricts the enforceability of this general power of appointment as against the beneficiaries; its self-evident purpose is to permit her to override their beneficial interests. I conclude that the powers in question are sufficient in extent to justify subjecting the trust assets to the reach of creditors.

The defendants' fourth argument is that, in all the Massachusetts and federal cases in which *Reiser* has been cited to enable creditors to reach the assets of a trust, the debtor was the settlor of the trust. Here, the debtor is not the settlor: she is the declarant of the trust but not the individual who placed the assets in trust. The defendants are correct in pointing out that in the cases cited above, the debtor was in each instance the settlor. In most of those cases, however, the debtor was also the trustee. More importantly, in each of those cases, the debtor was the

13

individual who, as either trustee or settlor, was possessed under the trust instrument of a power to control the trust assets to the exclusion of the trust beneficiaries. It is the possession of this power—one tantamount to a general power of appointment—that brings the trust assets within the reach of creditors.

> When a person has a general power of appointment, exercisable by will or by deed, and exercises that power, any property so appointed is, in equity, considered part of his assets and becomes available to his creditors in preference to the claims of his voluntary appointees or legatees. [Citations omitted.] These decisions rest on the theory that as to property which a person could appoint to himself or his executors, the property could have been devoted to the payment of debts and, therefore, creditors have an equitable right to reach that property. It taxes the imagination to invent reasons why the same analysis and policy should not apply to trust property over which the settlor retains dominion at least as great as a power of appointment.

*State Street Bank and Trust Co. v. Reiser*, 7 Mass. App. Ct. at 637. It taxes the imagination no less to invent reasons why the same analysis should not apply where the holder of powers amounting to a general power of appointment is the trustee, and she holds those powers by virtue of the declaration of trust. The fact that the debtor, who was admittedly both trustee and declarant, was not also the grantor does not insulate those assets from the reach of her creditors. Under Massachusetts law, I conclude, the trust asset would be deemed an interest of the debtor in property. The requirement of "an interest of the debtor in property" is satisfied.

Two points of clarification are in order. First, this conclusion rests entirely on the fact that the debtor held the powers in question. It is not necessary to find that she ever *exercised* those powers. Nor is the manner in which she managed, held, and transferred the trust property at all relevant. Second, I need not and do not hold that the trust was invalid or a sham.[4] It is

---

[4] See *Markham v. Fay*, 74 F.3d at 1359 ("We do not hold that the trusts are invalid—a trust in which the settlor has reserved to herself the power to alter, amend or revoke, and is also

14

enough to determine that the trust was subject to powers that permitted Carol to revoke or modify the trust and transfer its assets as her own.

### 3. On or Within One Year before the Bankruptcy Filing

The evidence shows and is uncontroverted that the transfer occurred only 18 days before the Debtor filed her bankruptcy petition.

### 4. Less than Reasonably Equivalent Value

Braunstein must establish that in exchange for the transfer at issue, the debtor received less than a reasonably equivalent value. Although they do not strongly dispute this element, neither do the defendants concede the issue, instead putting the plaintiff to his proof. In order to satisfy this requirement, a plaintiff must adduce evidence of two things: the value of the asset transferred, and the value of whatever the debtor received in exchange. Here, Braunstein has adduced evidence only of the latter: that the Debtor received no more than $100 for the transfer of the property. He has adduced no evidence of either the value of the transferred property or the extent (at the time of transfer) of encumbrances against the property. Therefore, for lack of evidence on this essential element, the Court must deny summary judgment.

### 5. Insolvency

The final requirement (which I proceed to address in order to narrow the issues for trial) is insolvency. Braunstein has adduced evidence, which evidence is uncontroverted, that either

---

the sole trustee and one of the trusts' beneficiaries with a right to receive income and principal in her own discretion as trustee, is not invalid."). The Court makes no ruling as to the validity of the trust.

15

(a) the debtor was insolvent at the time of the transfer or (b) she was rendered insolvent by the transfer. Although it is not clear which of these is true, Braunstein's evidence establishes that one or the other is true. Under FED. R. CIV. P. 56(d), I therefore take this element to be established for purposes of this adversary proceeding.

## **ORDER**

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment is hereby denied. However, the Court further orders that, as detailed above, four of the five elements that the Trustee must establish for his count under § 548(a)(1)(B)—the sole exception being the requirement that the Debtor received less than reasonably equivalent value—are, pursuant to FED. R. CIV. P. 56(d), deemed established for purposes of trial.

Date: March 13, 2007

_____
Robert Somma
United States Bankruptcy Judge